May it please the Court, Sarah Boer, Atlantic Beach, Florida, for the appellant, Kim Saur-Sorn. The primary issue presented in this case, this Social Security case, is whether the administrative law judge set forth the requisite clear and convincing reasons for rejecting the opinion of Mrs. Sorn's treating psychiatrist, Dr. Sheryl Nathan, with the San Joaquin Mental Health Center. Mrs. Sorn has obtained treatment from that facility since March of 2000, and Dr. Nathan specifically opined that as a result of her nightmare disorder, her post-traumatic stress disorder, and her major depressive disorder, that she has either a poor or no ability to engage in various mental work-related activities. There is certainly no dispute that had the ALJ credited this opinion, a finding of disability would have been warranted in this case. This is because Dr. Nathan determined that, in his opinion, she could not perform the basic mental demands of unskilled work as set forth in the Commissioner's Own Ruling 8515 and 969P. That is that Mrs. Sorn would not be able to make simple work-related decisions, she would not be able to respond appropriately to coworkers, to supervision and usual work settings, and she would not be able to respond appropriately to changes in a work setting. Also, there was a vocational expert who testified at the hearing who testified that if he considered the limitations set forth by Dr. Nathan, there would be no work in the national economy that she could perform. The second issue before the Court is whether the administrative law judge properly evaluated Mrs. Sorn's subjective complaints. And finally, there is the issue of remedy. That is whether this Court should remand for the payment of benefits or remand for further administrative proceedings. The record documents that Mrs. Sorn has obtained treatment from Dr. Nathan as well as a therapist named Howard Allen at the San Joaquin Mental Health Center since March of 2000, and that up through the record goes up through October of 2001, she had been at that facility at least 26 times, which is more than once a month, either to see Dr. Nathan or to see her therapist, Mr. Allen. And on the particular mental health form at issue, which was actually sent by the hearing office, the hearing office sent this form to Dr. Nathan. It's a detailed form, and Dr. Nathan set forth these various functional limitations and stated that he based his opinion on Mrs. Sorn's poor concentration, her poor memory, her lack of interest and ability to carry out various activities of daily living other than her basic self-care, the intrusive re-experiencing of trauma she experienced in Cambodia, and also her severely impaired ability to concentrate, follow instructions, and to make personal and social adjustments. Let's assume the panel were to agree with you. The other great block of cases that we get from a similar administrative body is in the immigration area. And the Supreme Court has told us in a case called Ventura that ordinarily where we agree with the petition, we should remand it to the concerned agency to reach a determination on the merits. What's your position on whether we should? Well, this Court addressed this issue, I guess, in 2004 in the Benecki case. They talked about whether or not the Court should remand or reverse a case. And in the Benecki case, the Court held that or set forth or reiterated what's been the law in this circuit for a while, that a remand for award of benefits is warranted if the ALJ does not provide legally sufficient reasons for rejecting evidence, if there are no outstanding issues that must be resolved before a determination of disability could be made. And it's clear from the record that the ALJ would be required to find the claimant disabled were the evidence credited. The thing that prompted my question, and I may have misheard you, was is our choice to direct the award of benefits or to remand to follow if we were to agree with you concerning the merits? The choices would be to remand with directions to award benefits or to remand for further proceedings, perhaps to reevaluate the opinions, the evidence of record, to reconsider the treating physician's opinion, and to reconsider the subjective symptoms. So those would be the two choices. What's interesting in this Benecki case was that in that case, there was vocational testimony, as there was in this case. In the Benecki case, however, it was not clear from the record, based on that testimony, that had the expert was never asked had he credited all these symptoms and credited the doctor's opinions that an award of benefits, what his opinion would be, but the court nonetheless sent it back for an award of benefits. That claimant's prior work was as a telemarketer, and since there was documentation that she couldn't perform that very limited, light, sedentary work, that the court remanded for an award of benefits. In this case, we have different kind of evidence because we have clear the V.E. was asked to consider Dr. Nathan's opinion, and considering that opinion, the vocational expert testified there's no work that Mrs. Thorne could perform. And it's our contention that really that evidence is uncontradicted. There's nothing in the record that rebutts Dr. Nathan's opinion. The closest thing we have to an actual rebuttal would be the State agency assessments. There's one State agency assessment that was completed in April of 2000. Now, remember, she only started treatment with Dr. Nathan in March of 2000. So in April of 2000, a psychologist did look at the file for the State agency, and at that point, this is in the record at page 175 to 183, at that point determined that the impairment was, in fact, severe, but it wouldn't was not expected to last 12 months. And then they projected, that doctor projected that in March of 2001, which was a year after she applied for benefits at that point, she would have a slight limitation in activities of daily living. She would have slight difficulties in maintaining concentration, and she would have seldom deficiencies of concentration, persistence, and pace. Now, another doctor looked at the file in August of 2000 for the State agency, and you have to look through the notes. On page 199 of the record, there's this doctor's notes based on that review. And the notes are, she continues to be depressed, with no change in mood, is medically compliant, and continues to have severe nightmares, hypogothic imagery, and intrusive memories when awake. It seems to me that there has been little improvement since March, despite treatment. So even though there is an RFC assessment in the file that says she's, that she will have these, or, excuse me, a psychiatric review technique form in the file that projects that is March of 2001, her limitations would be mild. If you read through the actual notes, the actual notes are documenting that, certainly as of August, she still has severe limitations. And those doctors didn't have a chance to review all the more recent records from Dr. Nathan, which are in the file, which document that, in fact, her condition was not, did not improve with treatment. If you're correct in your assessment, then I assume that either way, your client is going to receive benefits. Hopefully. She's been trying to get benefits for over six years. I ask a very simple question, that either way, under your argument, she will win. Now, the issue is, is we have an expert agency that deals with this all the time.  We don't involve ourselves with the expert evidence. We don't have the experts to take a look and tell us whether there's something else that should be considered. So why should we, if you're convinced, so convinced that we should give benefits, you must be as convinced you'll win going down below. Why should we circumvent the experts? Why should we take on their responsibility if your client's going to win anyway? The client should win because the evidence of record is really complete. There's nothing more that needs to be done. Based on your answer to my question, the question is, if you are right that your client is going to win anyway, why should we end around the experts and take over their responsibility? Why shouldn't we allow them to take another look to see if they can find anything else from what you've said? Well, I think you have to look at the long wait for benefits. This Court looked at that issue in Bonnecchia, that the woman's waited so long. This process, when you send a remand order, it could take a year or more before it gets all the way back through the system to the agency. And I think in a case like this where the evidence and the record is clear, there's no contradicted evidence, the proper remedy is to remand for an award of benefits. I'd like to reserve my remaining time. Do we have evidence in the record that it will take a year? I'm just stating as a matter of practice, it takes a long time for these cases to go back through the system. No. It's simply a question of time. We'll allow you about a minute for rebuttal. Thank you for your argument. We'll hear from the Commissioner at this time. Thank you, Your Honor. My name is Jean M. Turk. I'm here representing the appellee, Joanne Barnhart, Commissioner of Social Security. This case is a winner, both on the law and the facts, and both the law and the facts are on the appellee's side. Because a reasonable person could conclude on the basis of the evidence in the transcript that claimant is not disabled, substantial evidence supports the Commissioner's position. Also, the law is on our side. The ALJ properly — the district court found that the ALJ properly considered the opinion of plaintiffs treating psychiatrists and found sufficient clear and convincing reasons to discredit that opinion. The ALJ did look at the list that my colleague has talked about. That particular form of work, the residual functional capacity, was undated. There's no way to tell, although at the end of the first hearing, the ALJ did make it clear that that particular form was undated, and counsel did not choose to clarify that. However, it's undated. We kind of feel that it was probably from November of 2000. Now, the claimant bears the burden of proving disability and thatness for a 12-month period. So those rather extreme limitations, the ALJ found, were not supported by evidence in the record. And I also say that if one is to look at the record from a 12-month period after March of 2000, you will see that the record actually shows that plaintiff did improve. Her original complaints were that she was depressed, she was having nightmares and insomnia and short-term memory. One month after receiving treatment through medication and therapy, this is at transcript 191, her sleep increased. In July of 2000, the therapist reported that her kids, she was having better communication with her kids. In December of 2000, Dr. Nathan, I'll call him Dr. Nathan, recorded that plaintiff claimed that she was better than before. She feels better. She's doing chores now. In March of 2001, which would be one year after she began treatment, although her concentration was not good, she was feeling better, she was doing chores, and her nightmares were lessened. Dr. Nathan was a treating physician? Dr. Nathan was a psychiatrist who saw the claimant on a 12-week basis. However, again, evidence of claimant's improvement in approximately June of 2001. I'm sorry, Your Honor. My question was real simple. Oh. He was a treating physician. He was, Your Honor. Can you show me in the record where the ALJ explained why he rejected the treating physician's opinion? In the decision, Your Honor? Yes. Yes. I have a transcript page 16. He finds that the assessment was not supported by the medical records, which showed no significant cognitive impairment, nor is it consistent with other substantial evidence in the record. Your Honor, that's based on the mental status of the record. It's page 16, but it is page 5 of 8 of the decision. Okay. The ALJ based that on a mental status examination that was done by Dr. Nathan in March. Dr. Nathan found that plaintiff's thoughts were linear. She was alert and did not register any cognitive impairments. The claimant could identify the president at the time, President Clinton. She could perform simple math. She made change from a $5 bill. She could repeat numbers, three-number series, backwards and forwards. When asked what she would do if there was a fire, she said she would scream and get help. Again, these are things that would give a reasonable person doubt that this individual was so The ALJ also based that on every single How can that possibly be a measure of someone's ability to work as a gainful employee in the national workforce? That's a five-minute examination. In this case, Your Honor, I don't believe it was five minutes. I mean, what you've represented is a you could conclude that on the basis of a five-minute It is a quick examination. However, we have a year and a half of treatment notes. Every single note says that this claimant was alert and oriented. It does not say, none of those treatment notes say that she can work. I mean, alert and oriented means that you can communicate. I've been listening to your argument and going through the notes that I have, and improving in sleep, improving after six months in communication with children. Finally, she can do chores after about a year. None of this seems to be good evidence that she can work at a gainful employment in the national economy. Your Honor, that was for the administrative law judge to decide, and that's based on our regulations, which offer us the definition. Yes, Your Honor. Right, but we're focusing on why the administrative law judge rejected the opinion of the treating physician that she was disabled. And it seems to me really what it rests on is some glossing on a few of the records, because I don't think the records undermine the psychiatrist's conclusion. And second, and probably more importantly, he didn't believe the claimant. He didn't find her credible. Right? Yes, Your Honor, and credibility was an important aspect. In fact, the judge takes pains to say that any opinion based on the claimant's subjective complaints would not be given lesser weight because of the strong showing that this particular claimant was not credible. Well, when there is objective medical evidence to support subjective complaints, what is our task under our case law? Or what is the ALJ's task under our case law? The ALJ is able to, if the ALJ proves that the – finds that the subjective complaints of the claimant are not credible, then the ALJ need not credit any medical – even a treating physician's opinion that is based on those subjective complaints. But isn't – doesn't our case law dictate otherwise when there is objective medical evidence that support – that would support the subjective complaints? In the unique case, fibromyalgia is something that the courts have been struggling with there because – because the medical evidence tells us that there are no objective findings. There – it would be a pretty weak argument to reject a treating physician's opinion based on subjective evidence. But here we do have objective evidence. We have these visits by claimant, again, twice – approximately twice monthly with her therapist and approximately every four – three week – 12 weeks with her psychiatrist that do offer objective evidence. And the objective evidence is that when first seen in March, that she was – she had no cognitive impairments. She – her memory was good. She could perform simple tasks. Now, no other mental status examination appears in the record. We have Dr. Nathan's medication notes. Let me interrupt for a second. How does that differ in a principled way from the treatment that we would give fibromyalgia, for example? Because it's a – as you said, it's a very difficult syndrome to diagnose. Pain comes and goes. Why – why shouldn't we treat depression and mental illness in the same fashion? Well, Your Honor, because there are some objective measures that can be observed. Same thing with fibromyalgia. I believe there are the 12 trigger points now that can be observed. But with mental illness, what I'm saying, Your Honor, is this individual was able to take six years of English classes. She – not only does she drive a car, she owns a car. That's a big responsibility for someone who is unable to even do simple, unskilled work. Are you really saying that if someone owns and drives a car, they cannot also be clinically depressed? They can be, Your Honor. But are they then functionally disabled? And in this case, there is simply no evidence to show that this individual has such mental problems. Granted, she's sympathetic. She's having nightmares. But again, the evidence shows that as soon as she started getting treatment and therapy, she began to progress. Now, I know that my opponent here disagrees with that. But the ALJ looks at the evidence. And we trust the ALJ to take that evidence and make an interpretation. And you may not have the same feelings about it, or I may not. But that isn't what our job is. The ALJ's job is to look at the evidence. And if there is a rational basis for that evidence, then it's not our position to set that aside. And I believe that the ALJ did just that. But isn't our job to see whether the ALJ did his or her job properly? In other words, the ALJ is not a doctor either. So in order to reject a treating physician's diagnosis, he or she has to dot the I's and cross the T's. And that's what this is all about, isn't it? Yes, Your Honor. And our job is to see whether or not the ALJ did his or her task? Yes, Your Honor. And I believe the ALJ did. The ALJ used specific and legitimate reasons. They were not conclusory reasons to reject the opinion of Dr. Nathan. And the reasons that he gave were specific. And they are based on evidence in the record. Thank you for your argument. Could I have a question? Yes. Yes, Your Honor. I wanted to get one clarification. I'm somewhat concerned about the role of the social worker, Howard Allen, who appears to be involved through this process. He seems to be some sort of a person who's trying to help the claimant. We have this checkoff list, which I think is the one that's on page 20 of the petitioner's brief. But it appears that Howard Allen, at least from something, I may be wrong, but it seems to me he was involved in the development of that checkoff list along with the doctor. Is that correct? Yes, he was, Your Honor. And although the social worker would not be regarded as a viable medical source, his opinion, he plays a big role in the therapy and treatment of this individual. And, in fact, in August of 2001, when claimant told the therapist that she no longer would be participating in therapy because she had achieved her goals, it was that therapist who indicated that her nightmares were reduced, her understanding was increased, her ability to remember was also increased, she was alert-oriented, and her effect was proper. So that's not the point. I'm sorry, Your Honor. When we evaluate the report, when there's a doctor and a therapist, social worker, filling out the report, how do you know which is a medical report, which we give high credence to, the treating physician, and which is a social worker, which our cases so far have not risen to the same level of deference? Well, if you're speaking to the physical evidence itself, Dr. Nathan's reports are very easily identified in the record. They're a one-page... I understand that. Oh, okay. I'm talking about the check-off list in which two people apparently were involved in the check-off list. How do you know which one is a doctor so we can give deference to the treating physician and which part of it is a social worker, which doesn't get the deference? Well, I think the argument would be that they consulted each other in filling out... The argument would be... Okay. ...who was making the decisions, who was doing the check-off. No, Your Honor, it does not. And most definitely, it does not show the date that that report was done. And we believe it was done prior to the 12 months. You've covered that. Okay. Your Honors. Thank you. Thank you for your argument. We'll hear rebuttal at this time. I have three points. First is the ALJ stated during the decision that he was reluctant to disagree with a treating psychiatrist and asked for more information regarding the duration of the impairment, which was provided by Dr. Nathan in the transcript at page 271, where he stated on September 25th of 2001 that her impairments had continued and would persist. So essentially, he reaffirmed the findings in that report. The court asked regarding the acceptable medical source issue. The assessment and issue was signed by both Dr. Nathan and by the social worker, and it's our contention that certainly the doctor concurred in that assessment by signing it, and therefore, that assessment should get the deference according to a treating physician. But also, even if it's even a social worker, their opinions, according to 416913, those opinions still must be considered regarding functional limitations of a claimant. An acceptable medical source needs to diagnose an impairment, but other kinds of sources can assist in providing information regarding how an impairment affects functioning, and that's certainly the role that this licensed clinical social worker could perform. I want to mention quickly that under the Social Security rules, we have signs, symptoms, and laboratory findings, and the regulations talk about psychiatric signs. And here we have the reports from Dr. Nathan have just that, the psychiatric signs, which are what a doctor observes, the abnormalities of behavior, psychological abnormalities, et cetera. This is in 416928. And these are the kinds of things that are throughout Dr. Nathan's report are the psychiatric signs, and that would be what was the objective evidence to support the opinions. And finally, on the issue of remedy, this court talked about in the Binecki case, the remaining a disability claim for further proceedings can delay needed income for claimants who are unable to work and are entitled to benefits, often subjecting them to tremendous financial difficulties while awaiting the outcome of their appeals and proceedings on remand. And as in Binecki, we would ask you to remand for an award of benefits. Thank you. Thank you both. Thank both counsel. The case just argued will be submitted for decision. We'll proceed to the next case on the argument calendar.
judges: Wallace, Hawkins, Thomas